632 F.2d 1014
 15 ERC 1113, 10 Envtl. L. Rep. 20,846
 UNION CARBIDE AGRICULTURAL PRODUCTS CO., INC. et al.,
Plaintiffs-Appellees,
v.
Douglas M. COSTLE, as Administrator of the Environmental
Protection Agency and United States Environmental
Protection Agency, Defendants-Appellants.
 No. 921, Docket 79-6200.
 United States Court of Appeals,
Second Circuit.
 Argued April 3, 1980.
Decided Sept. 24, 1980.
 
 Michael H. Dolinger, Asst. U. S. Atty., New York City (William M. Tendy, U. S. Atty. for the Southern District of New York, Peter C. Salerno, Asst. U. S. Atty., New York City, and Edward C. Gray, Deputy Associate Gen. Counsel, United States Environmental Protection Agency, Washington, D. C., on brief), for defendants-appellants.
 Robert L. Ackerly, Washington, D. C. (Sellers, Conner & Cuneo, Washington, D. C., John D. Conner, Washington, D. C., Allan J. Berlowitz, Arthur, Dry & Kalish, New York City, on brief), for plaintiffs-appellees.
 Before FEINBERG, Chief Judge, Van GRAAFEILAND, Circuit Judge, and HAIGHT, District Judge.*
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 This is an appeal from an order of the United States District Court for the Southern District of New York which preliminarily enjoined appellants, the Environmental Protection Agency (EPA) and its Administrator, from enforcing against appellees two provisions of the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), section 3(c)(1)(D), 7 U.S.C. § 136a(c)(1)(D), and section 10, 7 U.S.C. § 136h(d) (Supp. II 1978). The district judge found that appellees had raised serious questions going to the merits, had shown substantial irreparable harm and a balance of hardships tipping in their favor, and were therefore entitled to preliminary injunctive relief. We reverse.
 
 
 2
 Appellees are producers of pesticide chemicals. Since 1947, FIFRA has required them to register their pesticides with the federal government. The United States Department of Agriculture (USDA) administered the registration program from 1947 until 1970, when EPA assumed that responsibility. To assist the USDA in evaluating registration applications, the 1947 law gave it discretion to require the submission of "a full description of the tests made and the results thereof upon which the claims are based". 7 U.S.C. § 135b(a) (4). Acting under this provision, the USDA required each applicant to submit data showing both the efficacy of the pesticide and the hazards, if any, in its use.
 
 
 3
 These data are the subject of this litigation. Appellees test thousands of compounds for efficacy, safety, and other properties before they ultimately offer one for sale as a commercial pesticide. This costly research and lengthy development process produce data that define the peculiar characteristics of the pesticide submitted for registration. Data of this nature must be submitted for registration. Data of this nature must be submitted to obtain registration not only in the United States but in many other countries as well. Without them, a manufacturer cannot compete effectively in the pesticide market. Appellees contend that the data submitted by them are common law trade secrets in which they have a property interest.
 
 
 4
 As enacted in 1947, FIFRA did not specifically prohibit the USDA from publicly disclosing submitted data or from using data supplied by one applicant to determine whether to register a pesticide offered subsequently by another. Although there is a dispute on this issue, it appears that the USDA made no public disclosures of data but did make use of data on hand in evaluating later applications. See Amchem Products Inc. v. GAF Corp., 594 F.2d 470, 472 (5th Cir. 1979).
 
 
 5
 In 1972, Congress amended FIFRA to prohibit the public disclosure of information which, in the judgment of the EPA Administrator, contained or related to "trade secrets or (confidential) commercial or financial information". Pub.L. No. 92-516, § 2, 86 Stat. 989 (1972). The 1972 amendments also prohibited the EPA for the first time from using data submitted by one company in support of another company's registration application, if, in EPA's judgment, such data were trade secrets or confidential commercial or financial information. Pub.L. No. 92-516, § 2, 86 Stat. 979-80 (1972). The amended Act was ambiguous, however. It failed to define "trade secrets", and it did not reveal whether the new limitations on use applied to data submitted before the effective date of the 1972 amendments. The latter ambiguity was resolved in 1975 when Congress provided that the new use restrictions applied only to data submitted on or after January 1, 1970. Pub.L. No. 94-140, § 12, 89 Stat. 755 (1975). Definition of "trade secret" was left to the Administrator and the courts.
 
 
 6
 The EPA took the position that the 1972 and 1975 amendments restricted use and disclosure of only a narrow range of data, such as formulas and manufacturing processes, and did not include the hazard and efficacy data at issue here. In a series of lawsuits, the industry challenged this view, meeting with some success. Several district courts held that test data might be considered a trade secret if the data met the requisites of that term as set forth in section 757, comment b, of the Restatement of Torts.[1] See, e. g., Mobay Chemical Corp. v. Costle, 447 F.Supp. 811, 824-27 (W.D.Mo.1978), appeal dismissed, 439 U.S. 320, 99 S.Ct. 644, 58 L.Ed.2d 549 (1979); Chevron Chemical Co. v. Costle, 443 F.Supp. 1024, 1031-32 (N.D.Cal.1978); Dow Chemical Co. v. Costle, No. 76-10087, (E.D.Mich., Nov. 16, 1977).
 
 
 7
 As originally filed on June 30, 1976, the present lawsuit also challenged EPA's construction of the 1972 and 1975 amendments. While the litigation was in progress, however, Congress enacted the Federal Pesticide Act of 1978, which amended FIFRA to reflect the EPA's position. Pub.L. No. 95-396, 92 Stat. 819 (Sept. 30, 1978).[2] Appellees then amended their complaint so as to attack the new provisions on constitutional grounds. Appellees contend that the disclosure and use provisions of the 1978 amendments constitute a taking of their property without just compensation or due process of law.
 
 
 8
 In an unreported opinion dated July 5, 1979, the district court granted appellees' application for a temporary injunction prohibiting the unconsented-to disclosure and use of appellees' trade secret research and test data submitted on or before September 30, 1978, the date of the 1978 Act.[3] It is this injunction order that we now reverse.
 
 
 9
 In arguing for affirmance, appellees rely heavily on the oft-repeated doctrines that the purpose of a preliminary injunction is to preserve the status quo, Unicon Management Corp. v. Koppers Co., 366 F.2d 199, 204 (2d Cir. 1966), and avoid irreparable injury, New York Pathological and X-Ray Laboratories, Inc. v. INS, 523 F.2d 79, 81 (2d Cir. 1975), and that the grant of preliminary relief is an exercise of the trial court's discretion which will not be disturbed on appeal unless the trial judge has abused his discretion or misinterpreted the law. Triebwasser & Katz v. American Telephone & Telegraph Co., 535 F.2d 1356, 1358 (2d Cir. 1976).
 
 
 10
 Appellants, on the other hand, point to the reiterated rule that interim injunctive relief is an extraordinary and drastic remedy which should not be routinely granted, particularly if the grant may adversely affect the public interest in a manner which cannot be compensated for by an injunction bond. Medical Society of New York v. Toia, 560 F.2d 535, 538 (2d Cir. 1977). Appellants also remind us of the well-established rule that where, as here, there has been no evidentiary hearing in the trial court, this Court is in as good a position as the district judge to interpret the motion papers and may therefore take a closer look at what the district judge has done. Dopp v. Franklin National Bank, 461 F.2d 873, 879 (2d Cir. 1972). Giving due deference to the arguments of both sides, we are convinced that the order appealed from cannot stand.
 
 
 11
 Before a preliminary injunction will be granted in this Circuit, it must pass one of two tests. Both require a showing of irreparable harm. One requires in addition that the moving party show a likelihood of success on the merits. The other requires that there be sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly towards the moving party. Jack Kahn Music Co. v. Baldwin Piano & Organ Co., 604 F.2d 755, 758 (2d Cir. 1979). The district judge applied the second and less onerous of these two tests. This was error. When Congress authorizes or mandates governmental action that is in the public interest, more than a "fair ground for litigation" must be shown before the action will be stopped in its tracks by court order. Medical Society of New York v. Toia, supra, 560 F.2d at 538. The district court's misconception of the applicable legal standard requires reversal.
 
 
 12
 However, if the alternative "likelihood of success" test were applied, the result would be the same. Appellees' suit seeks declaratory and injunctive relief, not damages. Their claim in substance is that, insofar as FIFRA permits EPA to disclose and use their trade secret test data without just compensation or prior notice, it violates the Fifth Amendment. Those allegations raise knotty questions that are difficult to answer on the present record, especially where the answers sought must be sufficiently favorable to appellees to indicate a likelihood that they will succeed on the merits.
 
 
 13
 In the first place, there is the question whether all or only part of appellees' test data properly could have been characterized as a trade secret prior to the 1978 amendment of FIFRA and whether this characterization should have been made in the first instance by the EPA Administrator. The 1972 amendment, the first to give appellees statutory protection against unauthorized use and disclosure, placed the responsibility for this initial determination in the Administrator's hands. See Pub.L. No. 92-516, § 10(b), 86 Stat. 989 (1972) (current version at 7 U.S.C. § 136h(b) (Supp. II 1978)); Mobay Chemical Corp. v. Costle, supra, 447 F.Supp. at 824-27.
 
 
 14
 To the extent that appellee's test data fall within the definition of trade secret, the parties agree that the data are property interests entitled to due process protection. See Zotos International, Inc. v. Kennedy, 460 F.Supp. 268, 272-73 (D.D.C.1978); 14 Williston on Contracts, 3rd Edition, § 1645 at 194.[4] However, the parties are in sharp dispute concerning whether the statutes under attack will effectuate a taking for purposes of the Fifth Amendment. Appellants rely on cases such as Andrus v. Allard, 444 U.S. 51, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979) and Penn Central Transportation Co. v. New York City, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), to support their claim of no taking. Appellees base their opposing argument on cases such as Kaiser Aetna v. United States, 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979), Armstrong v. United States, 364 U.S. 40, 46-49, 80 S.Ct. 1563, 1567-1569, 4 L.Ed.2d 1554 (1960), United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), and Aris Gloves, Inc. v. United States, 420 F.2d 1386, 1391 (Ct.Cl.1970). The Supreme Court observed in Penn Central, supra, that "what constitutes a 'taking' for purposes of the Fifth Amendment has proved to be a problem of considerable difficulty." 438 U.S. at 123, 98 S.Ct. at 2659. The applicability of this statement to appellees' claim is apparent from the motion papers.
 
 
 15
 To complicate the problem in the instant case, a distinction must be made between EPA's use of appellees' data and its disclosure of the data to the public. The district court erroneously treated use and disclosure alike for purposes of the temporary injunction. Finally, there is the basic issue whether appellees are entitled to rely on a vested right of confidentiality in their trade data, most of which was filed before any statutory provision for confidentiality existed. See Westinghouse Electric Corp. v. United States Nuclear Regulatory Commission, 555 F.2d 82, 95 (3d Cir. 1977).
 
 
 16
 Assuming that appellees succeed in showing an unconsented-to taking of their property, they must still establish that they are without an adequate remedy in the Court of Claims under the Tucker Act, 28 U.S.C. § 1491. "Where the action against which specific relief is sought, is a taking or holding of the plaintiff's property, the availability of a suit for compensation against the sovereign will defeat a contention that the action is unconstitutional as a violation of the Fifth Amendment." Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 697 n.18, 69 S.Ct. 1457, 1465, 93 L.Ed. 1628 (1949). The Fifth Amendment does not require that compensation precede the taking. Hurley v. Kincaid, 285 U.S. 95, 104, 52 S.Ct. 267, 269, 76 L.Ed. 637 (1932).
 
 
 17
 Unlike the district court, we do not read Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978), as rejecting the doctrines enunciated in Larson and Hurley. The question of Tucker Act remedy entered Duke Power only as it bore on the jurisdiction of the district court to consider the limitation of liability provisions of the Price-Anderson Act, 42 U.S.C. § 2210. The issue on this appeal is not jurisdiction, but the substantive right to injunctive relief. If compensation under the Tucker Act is available, injunctive relief is not. Regional Rail Reorganization Act Cases, 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974).
 
 
 18
 FIFRA need not expressly provide for recourse to a Tucker Act remedy in order for that remedy to be available; the question is whether the Tucker Act remedy has been withdrawn. Id. at 126, 95 S.Ct. at 350. The district court did not find that withdrawal had taken place or even that it probably had taken place. It found simply that a question of withdrawal existed. "Likelihood of success" requires more substantial underpinnings than this.
 
 
 19
 After reviewing the same written record as did the district judge, we conclude that appellees have failed to show a probability that the above questions will be answered in their favor and that they are likely to succeed on the merits. They are not entitled therefore to interim injunctive relief.[5]
 
 
 20
 The order appealed from is reversed.
 
 
 
 *
 The Honorable Charles S. Haight, Jr., United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 According to the Restatement, "(a) trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."
 
 
 [2]
 In substance, the amended statute permits disclosure of data concerning test results and the environmental effects of a pesticide, with limiting exceptions as to manufacturing and quality control processes, methods for testing, detecting or measuring added inert ingredients, and the identity and quantity of the added inert ingredients. 7 U.S.C. § 136h (Supp. II 1978). The EPA is also authorized to use the data already in its files, with provision made in some cases for payment of appropriate compensation by the use beneficiary. Id. at § 136a(c)
 
 
 [3]
 The injunction order contained a limited exception applicable to formulators of the end-use pesticide products, who purchased registered pesticide chemicals from producers such as appellees
 
 
 [4]
 The Supreme Court discusses trade secrets in terms of "intellectual property". Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 478, 479, 482, 94 S.Ct. 1879, 1884, 1885, 1886, 40 L.Ed.2d 315 (1974)
 
 
 [5]
 Appellees' claim that irreparable loss may result from the lifting of the injunction does not leave the Court unmoved. However, if appellees have a meritorious cause of action, the risk of irreparable loss might have been avoided by recourse to Fed.R.Civ.P. 65(a)(2)