Hugh L. CAREY, Edward I. Koch, Alan Chou, Rose L. Dawson, Shmuel Lefkowitz, Michael Loizou, Edwin Martinez, Walter E. Marx, Brunilda Pacheco, Lamuel Stanislaus, The State of New York, and The City of New York, Plaintiffs,

v.

Philip M. KLUTZNICK, Secretary of Commerce, Vincent P. Barabba, Director, Bureau of the Census, William F. Hill, Regional Director, New York Region, Bureau of the Census, Richard Bitzer, Acting Assistant Regional Director, New York Region, Bureau of the Census, Arthur G. Dukakis, Regional Director, Boston Region, Bureau of the Census, United States Department of Commerce, Bureau of the Census, Jimmy Carter, President of the United States, and Edmund L. Henshaw, Jr., Clerk of the United States House of Representatives, Defendants.

No. 80 Civ. 4550 (HFW).

United States District Court, S. D. New York.

Oct. 10, 1980.

See also, D.C., 88 F.R.D. 249 and, D.C., 508 F.Supp. 404; D.C., 508 F.Supp. 420.

Cravath, Swaine & Moore, New York City, for all plaintiffs except the State of New York and Hugh L. Carey; Frederick A. O. Schwarz, Jr., Robert S. Rifkind, David A. Barrett, Roger D. Einerson, Francis P. Barron, Michael J. Malone, Catherine Raymond Flickinger, New York City, of counsel.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for the State of New York and the Hon. Hugh L. Carey; Robert Hermann, Peter Bienstock, Shiela Abdus–Salaam, Daniel Berger, Asst. Attys. Gen., New York City, of counsel.

Corporation Counsel of the City of New York, for the City of New York and the Hon. Edward I. Koch; Allen G. Schwartz, Mary McCorry, New York City, of counsel.

John S. Martin, Jr., U. S. Atty., Southern District of New York, New York City, for defendants; Michael H. Dolinger, Jane E. Booth, Steven E. Obus, Patrick H. Barth, Gaines Gwathmey, III, Asst. U. S. Attys., New York City, of counsel.

OPINION

WERKER, District Judge:

Plaintiffs[1] have commenced this action against the Bureau of the Census[2] to obtain declaratory and injunctive relief from what they allege is a serious undercount of the populations of New York City and New York State. In a previous opinion, this Court determined that plaintiffs had standing to raise the issues presented by this litigation, that their claims were ripe for judicial review, that review of their claims was not barred by the political question doctrine, and that they had stated claims upon which relief could be granted.

Plaintiffs originally moved for preliminary injunctive relief seeking in part to enjoin certain of the defendants from closing any District Offices in the State until plaintiffs were given a sufficient opportunity to review preliminary census figures; defendants attempted to enumerate persons that were missed in the original count; further attempts were made to re-enumerate persons whose questionaires were lost; all quality control procedures were carried out; certain enumeration procedures were repeated in specified areas; and other measures were undertaken to decrease the possibility that a sizable portion of New York's population was not counted. Because of intervening circumstances including the Census Bureau's decision to close a large number of its District Offices prior to the hearing on this motion, the plaintiffs modified their request for the foregoing preliminary injunctive relief. They now seek only that the Census Bureau be required to accept "Were You Counted" forms not received within the deadline set by the Census Bureau and computer tapes listing the names and addresses of "hundreds of thousands of New Yorkers who fall into" the hard-to-enumerate classification. They further seek that the Bureau be directed to compare these forms and tapes with Census Bureau records in order to ferret out persons heretofore missed in the count and then report to the Court its findings and the steps it will take to include these individuals in the official population tabulation that will be reported to the President. Plaintiffs' rationale for asserting that this relief is necessary is that despite any statistical adjustment that ultimately may be ordered, the actual headcount should be as accurate as possible in order to increase the overall reliability of census population figures. Defendants contend that plaintiffs are not entitled to the relief requested because they have failed to establish the possibility that they will suffer irreparable harm if the injunction is not issued and because they have not shown that they are likely to succeed on the merits.

A hearing on plaintiff's application was held on October 6, 1980. All of the evidence and arguments having been duly considered, the motion is hereby granted. In accordance with Fed.R.Civ.P. 52(a) my findings of fact and conclusions of law for purposes of this preliminary injunction motion are as follows.

*Facts*

Plaintiffs allege that there has been a substantial undercount of the populations of New York State and New York City in the 1980 census and that as a consequence, New York will lose at least one representative in Congress and also will be denied significant amounts of federal funds. According to plaintiffs, the undercount is a well-known phenomenon that has existed in the past and will occur again in 1980. They claim that the undercount is particu-

---

1. Plaintiffs are Hugh L. Carey, Governor of the State of New York, and Edward I. Koch, Mayor of the City of New York, in both their official and individual capacities, several other citizens, voters and taxpayers residing within New York State, and the City and State of New York.

2. Also named as defendants are Philip M. Klutznick, Secretary of Commerce, Vincent P. Barabba, Director of the Bureau of the Census, William Hill and Arthur G. Dukakis, Regional Directors of the Census Bureau for the New York and Boston Regions, respectively, Richard Bitzer, Acting Assistant Regional Director of the Census Bureau for the New York Region, Edmund L. Henshaw, Jr., Clerk of the United States House of Representatives, and Jimmy Carter, President of the United States.

larly severe with respect to persons falling within the hard–to–enumerate category and that New York contains a disproportionate number of these persons. Consequently, they contend that there has been a large undercount of the population of New York and that the undercount in New York is higher than that in other areas of the nation. Defendants do not dispute plaintiffs contentions except in so far as they relate to the magnitude of the undercount in New York and as it compares to the nation as a whole.

In support of their allegations that the undercount in New York is more severe than in other parts of the country, plaintiffs have submitted the results of a random phone survey of New York City and New York State residents between August 20, 1980 and September 11, 1980, conducted by the independent public affairs research organization, Penn & Schoen. The survey was structured to determine whether the household called had received a 1980 census form, whether it had completed and returned it and if not, whether a census enumerator had visited the household for the purpose of enumeration. Affid. of Douglas Schoen, sworn to Oct. 1, 1980, ¶ 2. The results of the survey indicate that 6% of the population of New York State and 8% of the population of New York City have not been counted by the Census Bureau.[3] Schoen affid. at ¶ 4. The Census Bureau, on the other hand, has asserted that the undercount for the nation will be approximately 3,000,000 of a total population of approximately 224,000,000. This estimate of the number of those who will go uncounted is only 1.3% of the total population.

See Statement of Vincent P. Barabba, Director of the Census Bureau, concerning the City of Detroit's 1980 Census Suit, Oct. 3, 1980. Clearly, the undercount estimated by the Penn & Schoen survey for New York is significantly larger than that estimated by the Census Bureau for the rest of the nation.

Plaintiffs have also submitted substantial evidence supporting their claims of the Census Bureau's mismanagement of the 1980 census. From their affidavits and depositions, it is clear that there has been a serious lack of communication between and among the various levels of Census Bureau management. Also evident is that conflicting directives have been issued to different District Offices concerning the number of challenges to census figures that could remain unverified at the time an office closed. See, e. g., Dep. of Ethel Brown at pp. 185–86; Dep. of Hubert Calderon at pp. 9–12. Consequently, it appears that some offices were closed when there was still a relatively large number of unverified challenges while other offices were not closed until most or all challenges were verified. There is also evidence that there was insufficient manpower in many offices.

### Discussion

The standard in the Second Circuit for the issuance of a preliminary injunction has been "possible irreparable harm and either (1) probable success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." Dallas

---

**3.** According to plaintiffs' affiant, at the state-wide level, 5% of all whites, 9% of all hispanics and 10% of all blacks were not counted by the Census Bureau. In New York City, 6% of all whites and 10% each of the hispanic and black populations were not counted by the Bureau. Schoen affid. at ¶ 4. Follow–up interviews were effective in counting persons primarily with regard to only those persons who received a census form in the first instance. Thus, of households that received a form and did not return it, 72% were visited by a census enumerator while households that never received a form were visited at a rate of only 32%. Schoen affid. at ¶ 7. Any possible sources of bias in the survey, according to plaintiffs' affiant, would tend to underestimate the magnitude of any census undercount of the New York State population for reasons including the fact that many New Yorkers do not have phones and those without phones would be more likely to have been missed by the Census Bureau. Schoen affid. at ¶¶ 14–15. The results of the survey concerning black and hispanic households 'are accurate, at the ninety–five percent confidence level to within two percent . . . ." Schoen affid. at ¶ 13.

*Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 206–07 (2d Cir. 1979). Defendants contend that the Second Circuit's recent decision in *Union Carbide Agricultural Products Co. v. Costle*, 632 F.2d 1014 (2d Cir. 1980), has altered this test when the party sought to be enjoined is a governmental agency. They contend that under this decision plaintiffs are now required to show irreparable harm and likelihood of success on the merits and cannot carry their burden by relying on the less stringent test of irreparable harm and fair grounds for litigation and a balance of hardships tipping decidedly in their favor.[4] It is not clear to this Court that *Union Carbide* is controlling in this case for the reason that *Carey* unlike *Union Carbide* does not involve challenges to actions specifically mandated by statute. Rather, *Carey* involves challenges to actions and procedures developed for the 1980 census by the Census Bureau. Nevertheless, even if it is assumed that the plaintiffs must meet a more stringent burden imposed by *Union Carbide*, the Court finds for the following reasons that plaintiffs have demonstrated both irreparable harm and a substantial likelihood of success on the merits.

### Irreparable Harm

Defendants contend that plaintiffs allegations of Census Bureau mismanagement of the 1980 census are insufficient to establish the possibility that they will suffer irreparable harm. The Court disagrees with defendants for the following reasons. First, by their affidavits and depositions plaintiffs have raised important questions concerning the accuracy of the census count in New York due to Census Bureau mismanagement. Since the Bureau has consistently maintained that an adjustment of census figures is not feasible, *see* Statement of Vincent P. Barabba, Director of the Census Bureau, Concerning the City of De-

troit's 1980 Census Suit, Oct. 3, 1980, it would seem that plaintiffs right to maintain the efficacy of their votes will be irreparably harmed if the Census Bureau is not required to consider the "Were You Counted Forms" and computer lists proffered by plaintiffs. Second, defendants focus on plaintiffs' allegations of Census Bureau mismanagement overlook the serious constitutional issues raised by the plaintiffs. This Court has already observed that plaintiffs' fundamental right to vote may not be undermined by apportionment based on a census count that is so inaccurate that it results in the dilution of their votes. The possibility of irreparable harm posed by these factors is clear and consequently plaintiffs have met their burden on this aspect of the Second Circuit's test.

### Likelihood of Success on the Merits

Defendants contend that plaintiffs have failed to demonstrate that they are likely to succeed on the merits of the mismanagement claims. As previously noted, plaintiffs have submitted significant evidence concerning Census Bureau mismanagement of the decennial census. It appears to the Court that they have raised serious questions as to whether some of the policies or procedures employed by the Census Bureau were carried out in an irrational or arbitrary manner. I find that plaintiffs also have demonstrated clearly that they are likely to succeed on the merits of their claims that a disproportionate undercount of the population that dilutes the efficacy of their votes violates their fundamental right to vote under the United States Constitution. First, plaintiffs have submitted substantial evidence of the magnitude of the undercount in New York. Second, in my previous opinion in this case, I found that plaintiffs' allegations of impairment of the efficacy of their votes had stated a

---

**4.** In *Union Carbide*, the plaintiffs sought a preliminary injunction restraining the Environmental Protection Agency from enforcing certain disclosure and use provisions of the Federal Pesticide Act on the ground that they constituted a taking of their property without just compensation or due process of law. The

Second Circuit held that "[w]hen Congress authorizes or mandates governmental action that is in the public interest, more than a 'fair ground for litigation' must be shown before the action will be stopped in its tracks by court order." *Union Carbide Agricultural Products Co. v. Costle*, 632 F.2d at 1018.

claim upon which relief could be granted. Implicit in these findings is that plaintiffs have also established that the issues raised by them present fair grounds for litigation and that the balance of hardships tips decidedly in their favor.

*Conclusion*

For the foregoing reasons, plaintiffs motion for a preliminary injunction is hereby granted.

SO ORDERED.