SPERRY INTERNATIONAL TRADE, INC., Petitioner-Appellee,

v.

GOVERNMENT OF ISRAEL, Respondent-Appellant,

GOVERNMENT OF ISRAEL, Third-Party Petitioner-Appellant,

v.

AMERICAN ARBITRATION ASSOCIATION, Third-Party Respondent-Appellee.

No. 601, Docket 81-7751.

United States Court of Appeals, Second Circuit.

Argued Dec. 14, 1981.

Decided Jan. 21, 1982.

Jeffrey A. Fillman, New York City (Morris A. Wirth, Finley, Kumble, Wagner, Heine, Underberg & Casey, New York City, on brief), for respondent, third-party petitioner-appellant Government of Israel.

Norman Solovay, New York City (David R. Foley, Peter C. Kostant, Aron Broches, Holtzmann, Wise & Shepard, New York City, on brief), for petitioner-appellee Sperry Intern. Trade, Inc.

Before TIMBERS, KEARSE and CARDAMONE, Circuit Judges.

KEARSE, Circuit Judge:

Respondent-appellant Government of Israel ("Israel") appeals from an order of the United States District Court for the Southern District of New York, Milton Pollack, Judge, which, *inter alia*, enjoined Israel from drawing on a standby letter of credit issued in its favor by Citibank, N.A. ("Citibank") on behalf of petitioner-appellee Sperry International Trade, Inc. ("Sperry"), pending an arbitration panel's ruling on Israel's entitlement to draw on said letter. Because Sperry failed to demonstrate any likelihood of irreparable harm, we reverse so much of the district court's order as granted the preliminary injunction.[1]

## FACTS

The papers submitted by the parties to the district court paint the following picture. In July 1978, Israel and Sperry Rand International Trade, Inc., the predecessor of appellee Sperry (both referred to as "Sperry"), executed a contract (the "Contract") requiring Sperry, over a forty-month period, to carry out "Project 6977," the design and construction of a modern ground-to-ground communication system for the Israeli Air Force. Under ¶ 59 of the Contract, Israel's obligation to make certain payments to Sperry was conditioned on Israel's receipt of an irrevocable letter of credit in its favor. The Contract gave Israel the right to draw on this letter of credit upon presentation of a sight draft and Israel's own "certification that it is entitled to the amount covered by such draft by reason of a clear and substantial breach" of the Contract. (Contract ¶ 59.)

Paragraph 45 of the Contract provided that all Contract disputes that could not be resolved by negotiation were to be submitted to arbitration in accordance with the rules of the American Arbitration Association ("Association"). It required that any such arbitration be conducted in New York City, in the English language, and in accordance with the substantive laws of the State of New York.

In February 1979, Citibank opened its clean irrevocable letter of credit in Israel's favor for $11,847,749. (In August 1979 the

---

1. The order also rejected Israel's third-party petition to enjoin the appointment of non-United States nationals as arbitrators in the dispute between itself and Sperry, and Israel appeals this decision as well. For the reasons stated in note 2, *infra*, we conclude that this portion of Israel's appeal is without merit.

amount was increased to $15,008,098.) The provision for payment stated:

> FUNDS UNDER THIS CREDIT ARE AVAILABLE TO YOU AGAINST YOUR SIGHT DRAFT DRAWN ON US ... PROVIDED SUCH DRAFT IS ACCOMPANIED BY YOUR CERTIFICATION THAT YOU ARE ENTITLED TO THE AMOUNT COVERED BY SUCH DRAFT BY REASON OF NONDELIVERY IN ACCORDANCE WITH CONTRACT NO. 6977 OR BY REASON OF DENIAL OF THE NECESSARY LICENSES.

The credit was effective immediately, and was due to expire on January 13, 1982.

By the summer of 1981, it was clear that Project 6977 was not proceeding according to the parties' expectations, and on August 3, pursuant to ¶ 45 of the Contract, Sperry served on Israel and filed with the Association a Demand for Arbitration, seeking a declaration that Israel had breached its contractual obligations and demanding damages of approximately $10,000,000.[2] Sperry claimed that its attempts to perform its Contract obligations had been seriously and substantially frustrated, hindered, and delayed by the wrongful actions and inactions of Israel. In particular, Sperry claimed that Israel had failed to provide certain equipment, structures, facilities, documentation, information, and services to Sperry as required by the Contract, and that Israel had repeatedly insisted upon patently irrational interpretations of the parties' respective contractual rights and obligations. Israel denied Sperry's allegations and asserted eleven counterclaims, alleging, *inter alia*, nonperformance of the Contract by Sperry.

Although when Sperry initially requested arbitration, it estimated that it could complete the project if the timetable were extended by twenty months, the situation apparently deteriorated rapidly. On September 11, 1981, Sperry notified Israel that it would cease all work on Project 6977 by October 9, and it instituted the present suit, seeking, *inter alia*, to enjoin Israel from drawing on the letter of credit. It alleged that Israel had committed fraud in the underlying transaction, relying on N.Y. U.C.C. § 5–114(2)(b) (McKinney 1964), which provides that "a court of appropriate jurisdic-

---

2. Sperry also requested that, pursuant to § 16 of the Association's commercial rules, the arbitrators to be appointed not be nationals of either the United States or Israel. That section provides as follows:

> If one of the parties is a national or resident of a country other than the United States, the sole Arbitrator or the neutral Arbitrator shall, upon the request of either party, be appointed from among the nationals of a country other than that of any of the parties.

Israel argued that § 16 should not apply, since the Government of Israel is a country rather than a national or resident of a country, and argued that the Contract requires United States nationals as arbitrators because the proceedings are to be conducted in New York City in the English language, the dispute is to be decided in accordance with the law of New York, and the relevant documents are in English. After a flurry of correspondence, culminating in the Association's statement of its view that § 16 was applicable, Israel filed a third-party petition in the present proceeding, seeking an injunction against the Association's appointment of non-United States nationals as arbitrators. The district court denied the petition, and Israel has appealed, contending that the appointment of United States nationals was required by the Contract and by considerations of impartiality. We find this portion of the appeal meritless.

Neither the Association's rules nor the Contract provisions support Israel's position. Even assuming that Israel were correct in its assertion that § 16 does not apply when a party is a foreign government, there apparently is no rule that would in such circumstances *require* the appointment of United States nationals. Nor is there any Contract provision requiring that the arbitrators be United States nationals. We reject any suggestion that only United States nationals would be able to understand documents written in English or proceedings conducted in the English language in New York City. (Since oral argument we have been informed that the proposed arbitrators are English and Canadian.) And the New York choice of law provision does not require the arbitrators to be United States nationals any more than it requires them to be members of the New York bar. Finally, to the extent that Israel suggests that non-United States nationals would be biased against Israel, that is a claim over which the federal courts have no jurisdiction until the arbitration has concluded and an award has been rendered. *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 n.4 (2d Cir. 1980).

tion may enjoin" the honoring of a letter of credit when "there is fraud in the transaction," and asserted that it would be irreparably harmed if the injunction were not granted.

The district court, after a nonevidentiary hearing, enjoined Israel from making the certification that would enable it to draw on the letter of credit, "pending an early ruling by the arbitrators"[3] as to "whether it is equitable and proper in the circumstances that Israel shall or shall not draw on the letter of credit." The court stated the basis for this order as follows:

> The foregoing stay ... is based on an ample showing of good faith prima facie on the part of Sperry and without prejudice to the ultimate determination of that question, as well as on a probability of [S]perry's success on the merits and possibility of irreparable harm were not such a stay o[f] certification granted, or as a minimum, on a balancing of the hardships tipping decidedly toward Sperry and sufficiently serious questions going to the merits to make them a fair ground for litigation (arbitration).

> [$]15 million is not such a sum as could conceivably warrant any notion that Israel will be financially prejudiced if it does not have such a sum in hand for the brief period of the times specified above in order to pay its bills incurred in proceeding a[t] its own expense in processing the project.

This appeal followed. We reverse the district court's order granting the preliminary injunction because Sperry made no showing that it would be irreparably injured in the absence of such an injunction.[4]

---

**3.** Since the letter of credit was due to expire on January 13, 1982, the district court conditioned its stay on Sperry's extending the term of the letter of credit by the length of time that Israel was enjoined from drawing on it.

**4.** We express no view as to the other elements that a movant must establish in order to obtain injunctive relief.

**5.** In *Buffalo Forge, supra,* we emphasized the fact that irreparable harm is an element in the second test:

## DISCUSSION

The standard in this circuit for granting a preliminary injunction clearly requires a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir. 1979) (per curiam). *See also Buffalo Forge Co. v. Ampco-Pittsburgh Corp.,* 638 F.2d 568, 569 (2d Cir. 1981); *Union Carbide Agricultural Products Co. v. Costle,* 632 F.2d 1014, 1017–18 (2d Cir. 1980), *cert. denied,* 450 U.S. 996, 101 S.Ct. 1698, 68 L.Ed.2d 196 (1981); *KMW International v. Chase Manhattan Bank, N.A.,* 606 F.2d 10, 14 (2d Cir. 1979); *Jack Kahn Music Co. v. Baldwin Piano & Organ Co.,* 604 F.2d 755, 758–59 (2d Cir. 1979); *Seaboard World Airlines, Inc. v. Tiger International, Inc.,* 600 F.2d 355, 359–60 (2d Cir. 1979); *Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.,* 601 F.2d 48, 54 (2d Cir. 1979); *Caulfield v. Board of Education,* 583 F.2d 605, 610 (2d Cir. 1978). The rule thus recognizes two tests; as we have previously observed, however, "[b]oth require a showing of irreparable harm." *Union Carbide Agricultural Products, supra,* 632 F.2d at 1017. Under the first test, the movant may succeed if he shows irreparable harm plus a likelihood of success on the merits. Under the second test, the movant may succeed if he shows irreparable harm, plus sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the movant.[5]

> In appeals of this nature, appellants invariably emphasize the "serious questions going to the merits" test.... However, "serious questions going to the merits", standing alone, do not justify injunctive relief. There must also be a showing of irreparable harm, the absence of an adequate remedy at law, which is the sine qua non for the grant of such equitable relief.... Moreover, the movant must show that the harm which he

In the present case, it does not appear that the district court gave recognition to the fact that the second test, like the first test, requires a showing of irreparable injury. The court stated that its injunction was based on

a probability of [S]perry's success on the merits and possibility of irreparable harm were not such a stay o[f] certification granted, or as a minimum, on a balancing of the hardships tipping decidedly toward Sperry and sufficiently serious questions going to the merits to make them a fair ground for litigation (arbitration).

The statement suggests that the court viewed the second test as obviating proof of irreparable harm. To the extent that the district court ruled under this view of the second test it applied an erroneous standard of law.

This conclusion, however, does not require us to remand the matter for reconsideration under the proper legal standard, for our review of the record persuades us that the proof as to irreparable injury was insufficient as a matter of law. For potential injury to justify the granting of injunctive relief it must be irreparable; that is, it must be the kind of injury for which an award of money cannot compensate. *See Jackson Dairy, supra*:

it has always been true that irreparable injury means injury for which a monetary award cannot be adequate compensation and that where money damages [are] adequate compensation a preliminary injunction will not issue.

596 F.2d at 72. Thus, if it appears that the potential harm to the moving party is simply a monetary loss, the potential injury is normally not deemed irreparable and hence does not justify injunctive relief. *E.g., KMW International v. Chase Manhattan Bank, N.A., supra*, 606 F.2d at 14–15. Although there may be exceptional cases in which a monetary loss could not be compensated by an award of money damages, as where, for example, the movant shows that

would suffer from the denial of his motion is "decidedly" greater than the harm his opponent would suffer if the motion was granted.

the loss would force him into bankruptcy, *see NMC Enterprises, Inc. v. Columbia Broadcasting System, Inc.*, 14 UCC Rep. Serv. 1427 (Sup.Ct.N.Y.Co.1974), in general a preliminary injunction is inappropriate where the potential harm is strictly financial.

In the present case the district court made no express finding as to the nature of the possible injury to Sperry, and Sperry's offer of proof of potential injury was unusually sparse. It consisted only of the following assertion:

If [Israel] were now to draw down this letter of credit, Sperry's already severe cash flow problems would be aggravated to an extent such that Sperry's performance of the Contract would be hamstrung even if [Israel] were otherwise to fulfill its contractual obligations.

(Affidavit of Sperry Senior Contracts Administrator Gordon O. Lamb ¶ 9, dated September 9, 1981.) There was no elaboration whatever of the nature of the alleged cash flow problems, nor any suggestion that they could not be alleviated in some way even if Israel drew on the letter of credit. To the extent that this statement was intended to cast Sperry's overall financial condition in a light of imminent bankruptcy, it was wholly inadequate to justify the granting of injunctive relief. And to the extent that the statement described cash flow problems related only to Project 6977, it shortly became irrelevant: the only suggested consequence of the cash flow problems—the hindrance of Sperry's performance of the Contract— was obviously mooted when, two days after execution of the affidavit (and more than a month prior to the district court's decision), Sperry elected to cease work on the Contract.

At the hearing in the district court, Sperry apparently attempted, without presenting any additional evidence, to bolster the Lamb affidavit. Its counsel described Sperry as a $6 billion corporation that could quickly pay a $15 million judgment and

638 F.2d at 569.

asked the district court to take judicial notice that the profits of Sperry's parent corporation were "only $15 million" for the first quarter of 1981. Counsel argued that "knocking off a parent company's first quarter profits does irreparable harm to the company in the financial world with the price that money is at." Far from supporting Sperry's claim that its injury would be irreparable, these assertions make it clear that the potential damage to Sperry was strictly monetary and was highly unlikely to have the kind of disastrous effect that could justify the granting of injunctive relief.[6]

## CONCLUSION

The order of the district court is affirmed insofar as it denied an injunction against the appointment of non-United States nationals as arbitrators and is reversed insofar as it enjoined Israel from drawing on the letter of credit.

No costs.

**6.** Subsequent to the decision below and the oral argument before us, Sperry charged that Israel had expropriated certain Sperry property in Israel on December 18, 1981. Any such expropriation, however, even if uncompensated, does not appear to be relevant to any potential harm to Sperry from Israel's drawing on the letter of credit.