PEPSICO, INC., Plaintiff,

v.

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION, Defendant.**

No. 83 Civ. 4126.

United States District Court, S.D. New York.

June 2, 1983.

Cravath, Swaine & Moore, New York City, for plaintiff; Ronald S. Rolfe, H. Michael Clyde, New York City, of counsel.

Securities and Exchange Commission, Washington, D.C., for defendant; Linda D. Feinberg, Whitney Adams, Anne C. Flannery, Washington, D.C., of counsel.

SOFAER, District Judge:

The Securities and Exchange Commission ("SEC") is presently conducting a formal investigation of PepsiCo, Inc. for possible fraudulent disclosures of its financial status in certain SEC filings and in various other financial documents. Pursuant to its investigatory powers, 15 U.S.C. § 78u (1976), the SEC has issued and intends to continue to issue subpoenas to third parties that may possess information relevant to the possible wrongdoings of PepsiCo.

PepsiCo has filed a complaint asserting that it is entitled to an injunction requiring the SEC to give PepsiCo notice of all third party subpoenas issued by the SEC. PepsiCo notes without contradiction that the SEC and the public first learned of the apparent accounting fraud in the company's international division from PepsiCo itself. Furthermore the record indicates that PepsiCo has thus far cooperated fully with the SEC, and has agreed to supply the agency with the extensive information it seeks from PepsiCo. Thus the company can in this particular case claim with at least facial credibility that its insistence that it be notified "timely" of the subjects and contents of all third-party subpoenas is not motivated by a desire to impede the SEC, but only to ensure that PepsiCo's rights are protected.

PepsiCo claims that without adequate notice it cannot ensure that the SEC limits the scope of its third party subpoenas by the standards set in *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964), and that it will be unable to prevent the disclosure of privileged information in the hands of third

parties, particularly former employees. Citing the recent Ninth Circuit opinion in *Jerry T. O'Brien, Inc. v. SEC,* 704 F.2d 1065 [current] Fed.Sec.L.Rep. (CCH) ¶ 99, 182 (9th Cir.1983), in which that Court awarded the relief PepsiCo now seeks, PepsiCo requests a temporary restraining order ("TRO") barring the SEC from issuing further third-party subpoenas without first giving "timely notice to PepsiCo of the person to whom the subpoena is directed, its return date and its contents," until the parties can fully brief, and the Court can decide, the merits of PepsiCo's suit for permanent injunctive relief. For the reasons that follow, PepsiCo's request for temporary relief is denied, and the complaint is dismissed, with leave to complete the record for appeal.

## I. *Jurisdiction*

■ Considerable doubt exists as to this Court's jurisdiction to hear PepsiCo's claim. The complaint rests jurisdiction upon section 27 of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78aa, and upon 28 U.S.C. § 1331. Complaint ¶ 2. The former section simply places in the district courts of the United States exclusive jurisdiction to hear claims arising under the Securities Exchange Act. It provides no basis for the target of an SEC investigation to demand, by way of a declaratory order, injunctive relief requiring notice of third-party subpoenas. The federal question statute may provide some theoretical justification for an action such as this one, however, since *Powell* may be based on due process considerations, and because the attorney-client and work-product privileges are part of federal law. *See,* Fed.R.Evid. 501; *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). But the claimed need to protect these rights in the present context seems to lack sufficient concreteness to constitute a proper case or controversy, and moreover lacks the substance and form that the ripeness requirement serves to ensure. *See, e.g., Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515–1516, 18 L.Ed.2d 681 (1967) (ripeness doctrine avoids premature entanglement by courts in agency decisions).

PepsiCo has not identified a single subpoena issued by the SEC that even arguably violates the principles in *Powell,* or that seeks information on a subject or from a source that could possibly lead to the revelation of privileged material. PepsiCo concedes that the SEC is engaged in a bona fide investigation, and has so far treated the broad subpoena issued for PepsiCo's records as proper. This is not, in short, alleged to be an "unnecessary" investigation, the issue addressed by the Court in *Powell.* Furthermore, with respect to PepsiCo's privilege claim, the company has failed even to suggest how the SEC is likely to cause violations of its rights. It has failed to describe, for example, the type of privileged information that is likely to be disclosed, or to name former employees who might make improper disclosures. The context in which such problems will arise, and their content, is at this point largely a mystery. *See, e.g., Wearly v. Federal Trade Commission,* 616 F.2d 662, 666–67 (3d Cir.) (mere issuance of FTC subpoena does not create concrete risk of disclosure of trade secrets), *cert. denied,* 449 U.S. 822, 101 S.Ct. 81, 66 L.Ed.2d 25 (1980). Nor is it true that PepsiCo lacks any way of safely raising its claims in a concrete context. No evidence or authority has been offered to suggest that PepsiCo will lack opportunities to object to the enforcement of particular subpoenas issued to third persons, or to move for relief as a result of the SEC's violations of PepsiCo's rights, if such violations occur.

The parties have yet to brief the jurisdictional issues, but on the basis of the facts presented, and general jurisdictional principles, PepsiCo may well have no justiciable claim in the present context.

## II. *Requirements for TRO or Injunction*

■ PepsiCo has failed to satisfy the rigorous standard that must be met to warrant restraining a federal government agency presumptively acting in the public interest. To obtain such relief, a party must make "a clear showing of (a) irreparable harm and (b) either (1) likelihood of success on the

merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Sperry International Trade, Inc. v. Government of Israel,* 670 F.2d 8, 11 (2d Cir.1982); *see Union Carbide Agricultural Products Co. v. Costle,* 632 F.2d 1014, 1018 (2d Cir.1980), *cert. denied,* 450 U.S. 996, 101 S.Ct. 1698, 68 L.Ed.2d 196, *reh'g. denied,* 451 U.S. 976, 101 S.Ct. 2059, 68 L.Ed.2d 358 (1981); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979).

The mere possibility of confidential disclosures does not satisfy the irreparable harm requirement and hence justify even a TRO. *See State of New York v. Nuclear Regulatory Commission,* 550 F.2d 745, 755 (2d Cir.1977). The risk that the SEC will in fact obtain confidential information seems insubstantial. At the hearing held on May 31, 1983, the SEC described its policy and procedure of refraining from inquiring into subject matter that is likely to be subject to a privilege. PepsiCo can further reduce any risk of improper disclosure by supplying the SEC with a list of names of those former employees that are likely to possess confidential information. The SEC has offered to work with PepsiCo to avoid improper disclosures, and is fully cognizant both that PepsiCo has asserted its potential privileges in information held by third parties and that the breach of any privilege could have serious consequences.

The SEC agrees, in fact, with PepsiCo that no third person in possession of information can waive any attorney-client or work-product privilege that PepsiCo may have in that information. While this circumstance would tend to justify permitting PepsiCo to intervene in a subpoena enforcement proceeding, or to appeal a decision enforcing a subpoena for such information, it also tends to establish that the company will be able to vindicate its rights if a privilege is violated. The remedies appropriate for such a violation will no doubt depend upon the surrounding circumstances, and might well include sanctions designed to deter improper inquiries conduct-ed without notice. In this particular case, the SEC will be unable to claim later, if a breach of privilege occurs, that the agency was unaware that its third-party subpoenas might cause a violation of PepsiCo's rights. The SEC could avoid these risks through a modest degree of cooperation with a company that thus far has demonstrated its willingness to cooperate in the uncovering of all the relevant facts. These circumstances do not reduce the agency's authority, but they would appear to assure that the potential remedies for a breach of privilege on such a record will be potent enough to rectify any improper results, and to deter future repetition by federal investigators of any improper conduct.

### III. *The Merits*

PepsiCo has also failed to demonstrate a likelihood of success on the merits, or even that the questions presented are close enough to warrant delaying the agency's enforcement efforts. The cases PepsiCo cites establish its potential standing to seek permissive intervention to protect privileged information in adversarial proceedings the SEC initiates to enforce its subpoenas. These cases do not make clear, however, nor do they address, the power of a federal court to compel notice to an SEC target. *See Donaldson v. United States,* 400 U.S. 517, 529–30, 91 S.Ct. 534, 541–542, 27 L.Ed.2d 580 (1971); *United States v. Powell,* 379 U.S. at 57–58, 85 S.Ct. at 254–255; *Reisman v. Caplin,* 375 U.S. 440, 445, 84 S.Ct. 508, 511–512, 11 L.Ed.2d 459 (1964). Nor has PepsiCo cited to any statute or constitutional provision that would entitle every target of an investigation to timely notice of the contents of all third-party subpoenas. Apart from the Ninth Circuit's recent opinion in *O'Brien,* existing precedent in this and in every other Circuit, as well as in the Supreme Court, strongly suggests that PepsiCo has no such claim. *See, e.g., United States v. Miller,* 425 U.S. 435, 443–44, 96 S.Ct. 1619, 1624–1625, 48 L.Ed.2d 71 (1976); *Hannah v. Larche,* 363 U.S. 420, 446–47, 80 S.Ct. 1502, 1516–1517, 4 L.Ed.2d 1307 (1960); *Application of Cole,* 342 F.2d 5, 7–8 (2d Cir.), *cert. denied,* 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723 (1965).

The relief sought in this case would greatly hamper federal agencies in the performance of their public responsibilities. In a subpoena enforcement proceeding, a District Court may be able to fashion restraints and conditions to protect the privileges of a particular party such as PepsiCo that may be able to demonstrate that its conduct is not intended to delay or obstruct a legitimate investigation. (*O'Brien* in fact is a decision rendered in an enforcement proceeding, although the panel there seemed unconcerned with the implications of its ruling.) To permit PepsiCo the relief it seeks in this case, however, would necessarily permit all targets—and presumably all potential targets—effectively to monitor the course and conduct of agency investigations. Experience and common sense should establish that such a power would be greatly abused, and that the limited resources presently available in our agencies to enforce the nation's public policies would be significantly reduced because of procedural maneuvering and other even less wholesome tactics. The SEC's brief amply demonstrates the many uncertainties that such a rule would generate, moreover, including which targets must receive notice, the contents of that notice, what to do when a party not originally a target becomes one, and the exact nature of the rights that accompany notice. One could readily envision investigations in which several targets raise separate objections to each subpoena an agency serves.

■ *Powell* and other like cases, in fact, affirm the need for broad enforcement powers and the indispensability of a generous degree of trust in our government. To see these cases marshalled to support so disruptive a rule as PepsiCo seeks in this case is reassuring only in that it reflects the great ingenuity of the American Bar in defending corporations and individuals in our courts and agencies. That ingenuity must be kept within proper bounds, however, so as to prevent its socially destructive use. Even were PepsiCo able to show that close questions are presented in this case, the balance of hardship clearly tilts in favor of the SEC here for these very reasons.

Indeed, the Second Circuit counsels that when a government agency acts in the public interest, the balance may tip so decidedly as to make the litigability of the issue irrelevant: "when Congress authorizes or mandates governmental action that is in the public interest, more than a 'fair ground of litigation' must be shown before the action will be stopped in its tracks by court order." *Union Carbide Agricultural Products Co. v. Costle,* 632 F.2d 1014, 1018 (2d Cir.1980), *cert. denied,* 450 U.S. 996, 101 S.Ct. 1698, 68 L.Ed.2d 196, *reh'g. denied,* 451 U.S. 976, 101 S.Ct. 2059, 68 L.Ed.2d 358 (1981). While PepsiCo appears properly to describe its own motivations, and while the SEC should not lightly disregard the efforts of so cooperative a target to protect its legitimate rights, the relief sought here would extend far beyond assuring protection for cooperative targets. It would open the way to obstruction and suppression by all types of targets upon the issuance of every investigative subpoena. That is a hardship our public agencies should not be made to endure.

The request for temporary relief is denied. While the parties should be able to complete the process of briefing the issues relatively promptly, the views here expressed seem unlikely to be changed by further development of the relevant arguments. In the meantime, PepsiCo should be permitted to seek prompt Second Circuit review of the novel legal issues it has presented. The SEC has already served subpoenas that are returnable this week and it is already receiving responses to those subpoenas; PepsiCo's need for a final determination of its application is therefore pressing. To that end, and treating the substantial papers already presented as a motion to dismiss, the complaint is dismissed for failure to state a claim upon which relief may be granted. The Court retains jurisdiction, however, to receive any further papers the parties wish to file to make a complete record for appeal, and to reopen this decision if the parties consider further hearings in the Court necessary before an appeal is taken.

SO ORDERED.