**Herbert ROTH, Plaintiff,**

v.

**CARVEL CORPORATION, Defendant.**

**95 Civ. 5029(LAK).**

United States District Court,
S.D. New York.

Dec. 5, 1995.

---

Herbert F. Roth, New York City, Pro Se.

Daniel Gildin, Kaufmann, Feiner, Yamin, Gildin & Robbins, New York City, Jeffrey A. Klatzkow, Carvel Corporation, Farmington, CT, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

The parties to this attorney's fee dispute agreed, after the commencement of this action, to resolve the controversy by binding arbitration. They agreed to procedural ground rules and to the method for selection of the arbitrator. On their consent, the Court ordered this action discontinued "upon the appointment of the arbitrator." The parties thereupon ignored the stipulated method for selection of an arbitrator and now disagree as to whether an arbitrator has been duly appointed and, if so, whether he should be disqualified for bias. The matter comes before the Court on defendant's motion to disqualify the arbitrator and for related relief.

### Facts

The plaintiff, Herbert F. Roth, represented defendant Carvel Corporation ("Carvel") for many years. A dispute arose, however, when Carvel refused to pay certain of his charges, claiming that they were excessive. Roth then brought this action to recover the disputed fees and disbursements.

At a scheduling conference on September 11, 1995, the parties negotiated and signed a written agreement providing for the resolution of their dispute by arbitration. (Gildin Aff.Ex. A) The agreement spelled out the method for selection of the arbitrator. The parties were to request the president of the Association of the Bar of the City of New York (the "ABCNY") to provide a list of five proposed arbitrators. The agreement then provided: "Each side to have the right to object in rotation to one proposed arbitrator till one of the five is left."

However simple this may have been, it is not what happened. The president of the ABCNY did his part, furnishing the requested list of five names. (*Id.* Ex. B) The plaintiff then struck one name (*id.* Ex. C), whereupon Carvel announced that all of the remaining names "are acceptable to Carvel" (*id.* Ex. D). Plaintiff then selected and purported to appoint the individual whose name stood second among those remaining on the list and so notified Carvel, which initially voiced no objection.

The arbitrator thus allegedly selected promptly wrote to the parties to advise them of his willingness to serve. He disclosed that, as a practicing lawyer in New York City for many years, he was acquainted with the plaintiff and detailed the rather tenuous nature of their acquaintance. He added that he would be happy to serve as the arbitrator if there were no objection.

Carvel then decided that the arbitrator was not acceptable to it, raising the matter first with the ABCNY and then directly with the arbitrator. The ABCNY took the position that its responsibilities had been discharged when it provided the list of five names and washed its hands of the matter. The arbitrator rejected Carvel's objection and set the matter down for a hearing. Carvel then brought this motion.

### Discussion

In view of the fact that this Court entered an order discontinuing this action "effective upon the appointment of the arbitrator," the first question that must be addressed is whether this motion has been made in a pending action and, in consequence, whether this Court may entertain it.

While the parties quite plainly did not follow the method for selection of the arbitrator spelled out in the September 11, 1995 agreement, it is equally plain that they selected an arbitrator. Carvel relies on the words "the right to object in rotation" to argue that it had the option, but not the obligation, to strike two names from the list of five. This reading, however, ignores the

rest of the language—"to one proposed arbitrator till one of the five is left." The plan quite clearly was to provide a completely mechanical means of selecting a single arbitrator, a means that depended on each party striking two of the five names on the list. The quite natural reading of Carvel's November 7, 1995 announcement that all four remaining names were acceptable to it was that it agreed to the plaintiff picking any one of those four individuals. Any doubt on this score, if doubt there were, would be removed by Carvel's conduct. Plaintiff advised Carvel of his intent to do so, writing on November 8, "[s]ometime next week I will communicate to you my designation of an arbitrator." (Roth Aff.Ex. 1) Carvel did not object to plaintiff's plan, and plaintiff proceeded to designate an arbitrator.

 As it is plain that parties to an arbitration agreement may modify an agreed method for the selection of an arbitrator,[1] there simply is no basis for concluding that plaintiff's designation of the arbitrator did not constitute the appointment of the arbitrator within the meaning of the agreement unless the arbitrator's alleged bias or the failure to disclose the facts concerning the relationship between plaintiff and the arbitrator requires a different conclusion.

To be sure, the parties might have required such disclosure by all proposed arbitrators prior to selection. But there is no such provision in the agreement. Nor is there any reason to infer that this was the parties' intention.

The allegation of bias does not change the result. Questions of bias typically are for the arbitrator in the first instance, subject to review on application to confirm or vacate an award. *Marc Rich & Co., A.G. v. Transmarine Seaways Corp.*, 443 F.Supp. 386, 387–88 (S.D.N.Y.1978). Logically, then, there is no legal requirement that disclosure occur prior to appointment. Accordingly, the Court concludes that the arbitrator has been appointed, that this action no longer is pending, and that this Court lacks the power to entertain this application. Even if the Court retained

the power to dispose of this application on the merits, it would deny the request, as Carvel's objection is properly directed to any court that may review the award. *Id.*; *Sperry Int'l Trade, Inc. v. Government of Israel,* 670 F.2d 8, 10 n. 2 (2d Cir.1982).

### Conclusion

For the foregoing reasons, defendant's motion is denied and the Clerk is directed to close this case.

SO ORDERED.

---

1. *See Globe Transp. & Trading (U.K.) Ltd. v. Guthrie Latex, Inc.,* 722 F.Supp. 40, 46 (S.D.N.Y. 1989); III Ian R. Macneil, *et al.,* Federal Arbitration Law § 29.2.2.3 (1994).