The FOUNTAINHEAD GROUP, INC., Marimar Manufacturing Company, Inc., D. B. Smith & Company, Inc., and Blue Mountain Products, Inc., Plaintiffs,

v.

CONSUMER PRODUCT SAFETY COMMISSION; Nancy Harvey Steorts, as Chairman of the Consumer Product Safety Commission; Stuart M. Statler, R. David Pittle, Edith B. Sloan, Sam Zagoria, as Commissioners of the Consumer Product Safety Commission; and Todd A. Stevenson, as Freedom of Information Officer of the Consumer Product Safety Commission, Defendants.

81–CV–1150.

United States District Court, N. D. New York.

Dec. 7, 1981.

Bond, Schoeneck & King, Syracuse, N. Y., for plaintiffs; David P. O'Hara, M. Catherine Richardson, Ronald C. Berger, Syracuse, N. Y., of counsel.

George H. Lowe, U. S. Atty., N. D. N. Y., Syracuse, N. Y., for defendants; Paula M. Ryan, Asst. U. S. Atty., Syracuse, N. Y., of counsel.

Margaret A. Freeston, Acting Gen. Counsel, Consumer Product Safety Commission, Washington, D. C., for defendants; Alan H. Schoem, Asst. Gen. Counsel, Maria L. Jennings, Associate Gen. Counsel, Washington, D. C., Margot de Ferranti, Atty., of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Chief Judge.

The plaintiffs have instituted this action for declaratory and injunctive relief to review the defendants' decision to release certain information to the public pursuant to the Freedom of Information Act [FOIA], 5 U.S.C. § 552. The gravamen of their complaint is that the determination by the Consumer Product Safety Commission [Commission] to release certain materials pertaining to the plaintiffs is in violation, *inter alia*, of the Consumer Product Safety Act [CPSA], 15 U.S.C. § 2051 *et seq.*, and of the Administrative Procedure Act [APA], 5 U.S.C. § 500 *et seq.* Jurisdiction lies under 28 U.S.C. § 1331.

Presently before the Court is a motion by the plaintiffs Marimar Manufacturing Company, Inc., [Marimar], and D.B. Smith & Company, Inc., [D.B. Smith],[1] for a preliminary injunction against the release of this information. For the reasons set forth below, this motion is granted.

### I.

The following facts emerge from the parties' papers and from the evidentiary hearing held on November 16, 1981.

The plaintiffs Marimar, D.B. Smith, and Blue Mountain Products, Inc., [Blue Mountain], are wholly owned subsidiaries of the plaintiff The Fountainhead Group, Inc. [Fountainhead]. In this regard, Marimar manufactures a line of compressed air sprayers; D.B. Smith distributes these sprayers under its own label, as well as under other labels; and Blue Mountain labels certain sprayers and sells them under the "Parco" label.

After two investigations of incidents that possibly called into question the safety of the plaintiffs' products, the Commission, on November 6, 1979, initiated an investigation at Marimar's facilities. The investigator for the Commission requested and received copies of all accident reports and complaints made by customers to D.B. Smith, which included correspondence from consumers, distributors and retailers, and copies of various internal materials, which included information with respect to the thickness of the bottom of the plaintiffs' compressed air sprayers. Before turning over all such in-

---

1. The defendants have challenged the standing of the plaintiff Marimar to sue under the CPSA for a preliminary injunction. In this regard, the defendants contend that it has given only D.B. Smith a notice of intent to release documents. Accordingly, inasmuch as they have taken no action affecting or injuring Marimar, the defendants contend, this plaintiff lacks standing to sue. Such an objection, however, seems without merit at this time. The administrative record establishes to this Court's satisfaction that all dealings with the defendants have been on behalf of both companies, and that the notice of intent to release will indeed affect Marimar.

formation, the plaintiffs orally advised the investigator that they were claiming the information to be confidential commercial information. On this score, the plaintiffs had made no attempt to verify the accuracy of all the reported accidents, because they had turned the reports immediately over to their insurance carriers. Additionally, to date the plaintiffs have continued to supply the Commission with any accident reports that they might have received; again, the plaintiffs have not verified the accuracy of any reported incidents.

Following the inspection by the Commission investigator, in a letter dated November 16, 1979, Marimar and D.B. Smith expressed to the Commission their willingness to cooperate in any investigation to determine whether one of their products posed a safety hazard, and their willingness to discuss with the Commission an appropriate press release. In this same letter, the companies also requested

> pursuant to 5 U.S.C. § 552(b)(4) and 16 C.F.R. § 1015.18, that the names and addresses of our customers, the number of sprayers manufactured by Marimar and sold by Smith under any label, and our testing results be exempt from disclosure as confidential commercial information.

In May, 1980, the plaintiffs voluntarily recalled on a nationwide basis the possibly defective sprayers. The recall was accomplished, in part, by a joint press release issued by the Commission and the plaintiffs, by a point-of-purchase poster, by listings in certain national lawn and garden magazines, and by mailings to the plaintiffs' customers.

In the fall of 1980, the Commission informed the plaintiffs that it had received several requests under the FOIA for the disclosure of information regarding the plaintiffs' sprayers. The Commission submitted to the plaintiffs the pertinent material that possibly fell within the scope of the FOIA requests, and invited the plaintiffs to comment on the accuracy of the information, pursuant to Section 6(b)(1) of the CPSA, 15 U.S.C. § 2055(b)(1), and to interpose any claims of confidentiality against the disclosure of possible proprietary information, pursuant to exemption 4 of the FOIA, 5 U.S.C. § 552(b)(4), and to Section 6(a)(2) of the CPSA, 15 U.S.C. § 2055(a)(2).

Thereafter, in January and March, 1981, the plaintiffs' counsel raised specific objections to the disclosure of certain documents, on the ground that these materials contained information whose accuracy had not been established or which pertained to confidential proprietary matters or to personal information about users of their products. Furthermore, the plaintiffs' counsel contended that because their clients had voluntarily recalled the affected sprayers, disclosure of the accident reports would not be reasonably related to the purposes of the CPSA.

During the summer of 1981, the Commission held a meeting for the purpose of reviewing draft proposed regulations regarding the disclosure of documents under the FOIA. Although, to date, the Commission has not promulgated any disclosure regulations, the agency has adopted several staff guidelines on this subject that follow the proposed rules. These guidelines require, *inter alia*, that a manufacturer or labeler be afforded an opportunity to comment on the materials; that any such comments accompany the released documents; and that the disclosed materials be placed in context through the use of the appropriate explanatory language to the effect that although the Commission generally has not independently investigated all reported accidents, the Commission believes the reports to be generally accurate descriptions of individuals' beliefs about the information they report and valuable indications of product hazards. With respect to the adoption of these guidelines, the Commission concluded that while it had insufficient resources to conduct in-depth investigations of all consumer complaints responsive to FOIA complaints, investigations would be made of reports which, on their face, suggested inaccuracy, and of reports to which a manufacturer or labeler submitted information suggesting inaccuracy. Additionally, the Commission expressed its belief that the with-

holding of consumer complaints would be inconsistent with its statutory responsibilities. Furthermore, the Commission indicated that the public has a right of access to documents upon which decisions are based, in order that the public may evaluate whether the agency is complying with its obligations regarding public safety and health. Finally, the Commission delegated authority to an Information Group to make decisions in particular cases regarding disclosure.

With these guidelines of the Commission, the Information Group met and assessed the plaintiffs' objections to the disclosure of information regarding their product. In reaching its decision to release certain materials, the Group first decided that several inaccuracies noted by the plaintiffs should be corrected prior to disclosure. The Group also observed that a follow-up on-site investigation had confirmed the results of an earlier in-depth investigation. Additionally, the Group determined that information regarding the thickness of the bottom of the plaintiffs' product was not confidential commercial material, because, in the view of the Group, any purchaser of the product could ascertain the thickness. Moreover, the Group concluded that disclosure of three in-depth investigations and of consumer complaints that had not been investigated, along with the issuance of the Commission's suggested explanatory statement, would be fair and consistent with the Commission's guidelines and with the CPSA, and would effectuate the purpose of the CPSA, insofar as disclosure might promote investigation into the causes and prevention of product-related injuries.

In October, 1981, the Commission advised the plaintiffs' counsel of its decision to disclose materials to which the plaintiffs had objected. In this regard, the Commission supplied the plaintiffs' counsel with a copy of a letter to an FOIA requester. In this letter, the agency identified materials that the plaintiffs claimed to be inaccurate and struck this information from the disclosed documents. The Commission also specified information that had not been verified for accuracy and that had been compiled by a source other than the Commission.

Upon learning of the agency's decision, the plaintiffs commenced the instant action to stay the release of materials pertaining to their product. With respect to their motion for a preliminary injunction, Marimar and D.B. Smith in particular seek to stay the disclosure of all accident reports and consumer complaints not independently investigated by the Commission, and the disclosure of information regarding the thickness of the bottom of their product. These plaintiffs object to the disclosure of this information on the grounds that the Commission has failed to take reasonable steps to insure the fairness and accuracy of the information to be disclosed and to insure that disclosure would effectuate the purposes of the APSA; that the decision regarding disclosure was arbitrary and capricious and made without reference to any fixed standards set forth in formal rules or regulations; and that the materials to be released are confidential commercial information and hence not subject to disclosure. On this score, the agency has not disclosed materials which the plaintiffs contest, pending a decision by this Court.

## II.

As a threshold matter, this Court must address the question of what standard of review applies to this motion for a preliminary injunction. In this regard, the plaintiffs maintain that they need only raise substantial questions going to the merits as to make them a fair ground for litigation, and demonstrate that the balance of hardships tips toward their favor, and that the issuance of a preliminary injunction would be in the public's interest. Additionally, while arguing that they need not establish irreparable harm in this context, relying on 15 U.S.C. § 2055(b)(3), the plaintiffs claim that they have made a sufficient showing of irreparable harm. *Cf: Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). The defendants, on the other hand, argue that where, as here, a litigant seeks to enjoin federal governmental

action, a litigant must make the more rigorous showings of a likelihood of success on the merits and of irreparable harm, relying on *Union Carbide Agricultural Products Co., Inc., v. Costle*, 632 F.2d 1014, 1017–18 (2d Cir. 1980), *cert. denied*, 450 U.S. 996, 101 S.Ct. 1698, 68 L.Ed.2d 196 (1981).

Because this Court concludes that the plaintiffs have satisfied the more stringent standards urged by the defendants, and because the Court also finds that the public interest would be served by the entry of a preliminary injunction, it is not necessary to decide the appropriate standard of review in an action to preliminarily enjoin decisions of a federal agency. *Compare Carey. v. Klutznick*, 637 F.2d 834, 837, 838–39 (2d Cir. 1980).

### A.

Before turning to the issue of the plaintiffs' likelihood of success on the merits, it is useful to consider the statutory and regulatory context in which this action is set.

In 1972 Congress promulgated the Consumer Product Safety Act, with the general aim of protecting the public against hazards posed by unsafe consumer products. As stated in a declaration of purpose, Congress enacted the CPSA

(1) to protect the public against unreasonable risk of injury associated with consumer products;

(2) to assist consumers in evaluating the comparative safety of consumer products;

(3) to develop uniform safety standards for consumer products and to minimize conflicting State and local regulation; and

(4) to promote research and investigation into the causes and prevention of product-related deaths, illness, and injuries.

15 U.S.C. § 2051. In order to carry out its aim, Congress created the Consumer Product Safety Commission, vesting it with broad investigative powers and with the authority to promulgate consumer product safety standards, ban hazardous products, and collect and disseminate product safety information. *See* 15 U.S.C. §§ 2053, 2054, 2055, 2056, 2057, 2058.

With respect to the information functions of the Commission, although Congress recognized the importance of such activities, in terms of protecting the public, Congress also appreciated the fact that it was granting the Commission access to information which manufacturers and labelers might otherwise retain as confidential information. *See* House Conference Report No. 97–208, 97th Cong., 1st Sess., at 877–78, *reprinted in* [1981] U.S.Code Cong. & Admin.News, at 396, 1239–40 [House Conference Report]. *See also Consumer Product Safety Commission v. GTE Sylvania*, 447 U.S. 102, 111–12, 123–24, 100 S.Ct. 2051, 2057–58, 64 L.Ed.2d 766 (1980). Accordingly, Congress set forth various criteria in Section 6 of the CPSA, 15 U.S.C. § 2055, regarding the public disclosure of information. For example, Congress specified that some information would be completely exempt from disclosure:

All information reported to or otherwise obtained by the Commission or its representative under this Act which information contains or relates to a trade secret or other matter referred to in Section 1905 of title 18, United States Code, or subject to section 552(b)(4) of title 5, United States Code, shall be considered confidential and shall not be disclosed.

15 U.S.C. § 2055(a)(2). The broad sweep of this section emerges clearly from the legislative history:

It is wholly improper, and forbidden by this section, for the Commission to disclose information provided by a company if, taking a realistic view of the environment in which that company operates, such disclosure would result in any significant competitive harm to the company. While no conclusive formula can be devised, factors such as these are to be taken into account in determining whether a document comes within the prohibition: whether the information is considered confidential by the submittor and given appropriate protection; whether the information would reveal to competitors operational strengths and weaknesses or other valuable information to which

the submittor does not have access about those competitors; whether the information is readily available from other sources.

House Conference Report, at 877, *reprinted in* [1981] U.S.Code Cong. & Admin.News, 1239. On this score, the legislative history also indicates a congressional concern that the Commission "establish a system of review within the agency to evaluate the information provided in support of the claim of confidentiality." *Id.* at 878, *reprinted in* [1981] U.S.Code Cong. & Admin. News, at 1240.

Additional statutory criteria regarding the disclosure of information pertain to matters of accuracy, fairness, and need:

> The Commission shall take reasonable steps to assure... that information from which the identity of such manufacturer or private labeler may be readily ascertained is accurate, and that such disclosure is fair in the circumstances and reasonably related to effectuating the purposes of this Act.

15 U.S.C. § 2055(b)(1). Here again, the legislative history specifies that the Commission should "establish a system for review within the agency to evaluate issues of accuracy." House Conference Report, at 879, *reprinted in* [1981] U.S.Code Cong. & Admin.News, at 1241. With respect to these disclosure safeguards, the Supreme Court of the United States had occasion in *Consumer Product Safety Commission v. GTE Sylvania, supra,* to emphasize the importance of fair and accurate information dissemination. Confronted with the congressional mandate in the CPSA, as well as with the decision in *Consumer Product Safety Commission v. GTE Sylvania, supra,* the Commission has drafted proposed regulations, which apparently are to appear as 16 C.F.R. Part 1101, regarding information disclosure under Section 6 of the CPSA.

■ On this score, the plaintiffs have argued that the agency's proposed disclosure of information pertaining to their product ought to be enjoined, inasmuch as the Commission has failed to promulgate rules setting forth standards and proce-dures to be followed in performing its statutory duties. At this time, the Court is of the view that the plaintiffs have established a likelihood of success on the merits of this claim, and thus finds it unnecessary to address the other contentions raised by the plaintiffs.

■ It is a fundamental rule of administrative law that if an agency's rules of practice and procedure would have a substantial impact upon persons affected by agency actions, such rules must issue from rule-making proceedings, whether formal or informal; at a minimum, these rules must be published and held out for comments by affected persons and by the public in general, in order that the public can ascertain whether an agency is acting for the public good. *See* 5 U.S.C. § 553; *Brown Express, Inc. v. United States,* 607 F.2d 695, 702 (5th Cir. 1979); *Pickus v. United States Board of Parole,* 507 F.2d 1107, 1113 (D.C.Cir.1974); *Natural Resources Defense Council, Inc. v. Securities and Exchange Commission,* 389 F.Supp. 689, 700 (D.D.C.1974). *See generally Morton v. Ruiz,* 415 U.S. 199, 231–36, 94 S.Ct. 1055, 1072–75, 39 L.Ed.2d 270 (1974). In this regard, in enacting the CPSA, Congress has plainly afforded a panoply of agency procedural safeguards to manufacturers and labelers whose competitive positions might be impaired in the event that the Commission improperly disclosed various types of information. Apparently recognizing the congressional concerns about disclosure, the Commission has properly seen fit to engage in informal rule-making proceedings with respect to the disclosure of information. Indeed, even if the Commission had not so seen fit, this Court is satisfied that, in view of the substantial impact of the agency's actions upon the commercial situations of manufacturers and labelers, the agency would be under an affirmative obligation to institute some type of rule-making proceedings, whether this obligation arises under the CPSA or under the APA.

■ In view of the necessity of publicly adopted rules regarding information disclosure, it is altogether inappropriate for the

**300**

Commission, over the objections of the plaintiffs, to proceed to release information to the public about the plaintiffs' products pursuant to procedures and "guidelines" that have not been subjected to public scrutiny. Disclosure, under such circumstances, would be in plain derogation of the requirements that the public, and affected persons like the plaintiffs, be afforded a meaningful opportunity to comment upon agency standards, and that an agency be held to fixed, publicly known rules.

██ Moreover, it is precisely because the public has the right to evaluate the Commission's proposed rules that this Court shall decline, at this time, to evaluate the substantive merits of the defendants' actions. Were this Court to pass judgment, one way or the other, upon the agency's proposed rules, this Court not only would be intruding prematurely in a matter left initially within the purview of the Commission, *see Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 524, 98 S.Ct. 1197, 1202, 55 L.Ed.2d 460 (1978), and thus would be depriving the agency of an opportunity to reach a reasoned, informed decision about its rules of procedure, but also would be denying the public a chance to influence agency action and shape the contours of laws designed to serve the common good. In this regard, it may be that, following the receipt of comments from members of the public and from affected persons, the Commission may, upon reflection, decide against adopting the disclosure procedures that governed its evaluation of information about the plaintiffs' product.

### B.

With respect to the plaintiffs' *in camera* proof of irreparable harm, this Court concludes that the plaintiffs would suffer irreparable harm if information were improperly released by the Commission. *Cf: Pierce & Stevens Chemical Corp. v. United States Consumer Product Safety Commission,* 439 F.Supp. 247, 250, 252 (W.D.N.Y. 1977), *aff'd and remanded without opinion,* 578 F.2d 1369 (2d Cir. 1978).

Finally, as suggested in the previous discussion, this Court believes that the public interest in fair and principled administrative decision-making would be plainly served by the issuance of a preliminary injunction.

### III.

For the foregoing reasons, the plaintiffs' motion for a preliminary injunction is granted.

IT IS SO ORDERED.