**HONEYWELL, INC., Plaintiff,**

v.

**CONSUMER PRODUCT SAFETY COMMISSION, Defendant.**

Civ. A. No. 83–3922.

United States District Court, District of Columbia.

Feb. 27, 1984.

Clifton S. Elgarton, Patrick W. Lee, Crowell & Moring, Washington, D.C., for plaintiff.

Marcia A. Johnson, Civil Division, U.S. Dept. of Justice, Washington, D.C., Michael Gidding, Consumer Product Safety Commission, Washington, D.C., for defendant.

Elaine Mittleman, Falls Church, Va., for defendant-intervenors.

MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

Plaintiff, Honeywell, Inc., instituted this action for declaratory and injunctive relief to review defendant's decision to release certain information to the public pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1982). The gravamen of Honeywell's complaint is that the determination by defendant, the Consumer Product Safety Commission (the Commission), to release certain materials pertaining to Honeywell violates the Consumer Product

---

Safety Act (CPSA), 15 U.S.C. §§ 2051–2083 (1982). The individuals who made the FOIA requests in question have intervened as defendants.

This case is before the Court on Honeywell's motion for a preliminary injunction to prevent the release of documents pending resolution of this case on the merits. For the reasons set forth herein, Honeywell's motion is granted.

## FACTS

On March 7, 1983, the Commission issued an administrative complaint against Honeywell, pursuant to section 15 of the CPSA, 15 U.S.C. § 2064 (1982). *In re Honeywell,* CPSC Docket No. 83–2. In the complaint, the Commission alleged that certain Honeywell gas controls contained a defect and were therefore a "substantial product hazard." *See* 15 U.S.C. § 2064 (1982). During the discovery phase of the complaint proceeding, counsel for the Commission (complaint counsel) requested that Honeywell provide access to, and copies of, many engineering, marketing, and manufacturing documents from its files. Honeywell complied with the Commission's discovery requests and responded to numerous interrogatories. In addition, Honeywell provided documents relating to pending and closed civil actions involving the gas controls in question. Complaint counsel also deposed thirty current and former employees of Honeywell. Using data obtained in discovery, the Commission prepared, or had prepared by independent contractors, studies, tests, and reports for use in the proceeding.

In a letter of June 3, 1983, to the Commission, Honeywell claimed confidentiality for all information contained in pleadings or discovery responses submitted by Honeywell or complaint counsel. *See* 15 U.S.C. § 2055(a)(2) (1982); 18 U.S.C. § 1905 (1982). Honeywell's request for confidentiality was denied as inappropriate by the Secretary of the Commission on October 13, 1983. Honeywell was advised, however, that documents from the administrative proceeding would not be released before October 28, 1983, notwithstanding FOIA requests, to afford it an opportunity to seek a protective order. Honeywell failed to seek such protective order which may have resulted in *in camera* treatment by the Administrative Law Judge (ALJ).

The Commission had received requests dated July 7 and October 4, 1983, from defendant-intervenors, pursuant to the FOIA, for copies of a report prepared by an independent contractor and depositions of certain Honeywell personnel. The depositions were released to defendant-intervenors by the Commission on November 22, 1983. Prior to disclosing the depositions, the Commission did not comply with the procedures in section 6(b)(1) of the CPSA, 15 U.S.C. § 2055(b)(1) (1982), to safeguard the accuracy of the disclosed material and the overall fairness of the release. To support its noncompliance with section 6(b)(1), the Commission maintained that the documents disclosed were within the exception in section 6(b)(4)(B), 15 U.S.C. § 2055(b)(4)(B) (1982), to the requirements of section 6(b)(1).

Defendant-intervenors made a further FOIA request on November 28, 1983, for copies of thirteen depositions of Honeywell personnel. On December 9, 1983, Honeywell submitted a motion for a protective order to the presiding ALJ. *See* 16 C.F.R. §§ 1025.31(d), 1025.45 (1983). In support of granting a protective order, Honeywell contended that the documents obtained in discovery could not be disclosed until the Commission complied with the preclearance procedures in section 6(b)(1). At a prehearing conference on December 16, 1983, the presiding ALJ denied Honeywell's motion for a protective order based on the Commission's argument that the discovery material was within the section 6(b)(4)(B) exception.

On December 29, 1983, Honeywell brought this action pursuant to section 6(b)(3) of the CPSA, 15 U.S.C. § 2055(b)(3) (1982), to enjoin further disclosure of materials obtained from Honeywell during discovery or generated by the Commission from such data until the Court determines

if the Commission must comply with section 6(b)(1) before releasing these materials. As it did before the ALJ, the Commission asserts that it need not comply with section 6(b)(1) because the material in question is within the exception in section 6(b)(4)(B). Whether the section 6(b)(4)(B) exception is applicable to material obtained or generated during discovery in a section 15 proceeding appears to be a question of first impression.

## DISCUSSION

In 1972, Congress enacted the CPSA and created the Commission to "establish comprehensive and effective regulation over the safety of unreasonably hazardous consumer products." H.R.Rep. No. 1153, 92nd Cong., 2nd Sess. 26 (1972). To facilitate the Commission's regulation of consumer product safety, Congress granted it broad powers to collect, analyze, and disseminate product safety information, *see, e.g.,* 15 U.S.C. § 2054(a)(1) (1982), and to conduct research and investigations of consumer products, *see, e.g.,* 15 U.S.C. § 2054(b)(1)–(2) (1982).

Section 6 of the CPSA, 15 U.S.C. § 2055 (1982), regulates "public disclosure" of information by the Commission, including release of information to FOIA requesters. *See Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). Section 6(b)(1) requires that at least thirty days before the public disclosure of information obtained under the CPSA, the Commission notify the manufacturer and provide it with a summary of the information to be disclosed, if this information describes the product in a manner as to permit the public to ascertain readily the identity of the manufacturer. The manufacturer must be accorded a reasonable opportunity to submit comments regarding the information. In addition, the Commission is required to take "reasonable steps" to assure that such information is accurate and that disclosure is "fair in the circumstances and reasonably related to effectuating the purposes of [the CPSA]." 15

U.S.C. § 2055(b)(1) (1982). Upon the manufacturer's request, the Commission must include with the disclosed information any comments or other information, or a summary thereof, submitted by the manufacturer. Section 6(b)(4)(B), however, provides that the requirements of section 6(b)(1) do not apply "to the public disclosure of ... information in the course of or concerning ... an adjudicatory proceeding (which shall commence upon the issuance of a complaint)...." 15 U.S.C. § 2055(b)(4)(B) (1982).

Moreover, section 6(b)(3) provides that prior to the date set for release of the information, the manufacturer may bring an action in district court to enjoin disclosure. 15 U.S.C. § 2055(b)(3) (1982). The district court "may enjoin such disclosure if the Commission has failed to take the reasonable steps prescribed in [section 6(b)(1)]." *Id.*

In this case, the Commission admits that it did not comply with section 6(b)(1) before it released copies of two depositions to defendant-intervenors. The Commission states further that it plans to release additional material obtained during discovery or generated from information obtained in discovery without complying with section 6(b)(1). The Commission asserts that it is not required to comply with section 6(b)(1) as the material in question is within the section 6(b)(4)(B) exception.

For the Court to grant preliminary relief and maintain the status quo pending disposition on the merits, it must determine whether Honeywell has satisfied the fourfold test articulated in *Virginia Petroleum Jobbers Association v. Federal Power Commission,* 259 F.2d 921, 925 (D.C.Cir. 1958). *See Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir. 1977) [hereinafter cited as *WMATC*].

### A. *Likelihood of Success on the Merits*

Before a preliminary injunction will be granted, the Court must find either that Honeywell demonstrated probable success on the merits or that it presented a "seri-

ous legal question" and the balance of the equities favors granting relief. *National Association of Farmworkers Organizations v. Marshal*, 628 F.2d 604, 616 (D.C. Cir.1980); *WMATC*, 559 F.2d at 843–44. The Court in *WMATC* emphasized that the preventive nature of the requested relief permitted the court some discretion in finding that plaintiff would succeed on the merits:

> An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant. There is substantial equity, and need for judicial protection, whether or not movant has shown a mathematical probability of success.

559 F.2d at 844. Further, a court should not be required to engage in an overly refined analysis of the merits at such an early stage in the litigation. *Id.*[1]

To determine whether the section 6(b)(4) exception may be applicable to the materials obtained by the Commission from Honeywell, the Court must first examine the language of the statute. Section 6(b)(4)(B) provides that section 6(b)(1) does not apply to "the public disclosure of ... information in the course of or concerning ... an adjudicatory proceeding." The Commission virtually concedes that the material in question is not within the "information ... concerning ... an adjudicatory proceeding" portion of the section 6(b)(4)(B) exception. The Commission has defined "concerning" as referring to "information

about the administrative adjudication itself." 48 Fed.Reg. 57,435 (1983).

Thus, the phrase "in the course of" is at issue. The Commission maintains, on the one hand, that it modifies "information" and is thus adjectival. On the other hand, if the phrase is adverbial modifying "public disclosure," a different result would obtain. If adverbial, the phrase expresses some relation of manner or quality, place, time, or degree; thus, the statutory language of the "in the course of" exception may indicate that information disclosed by the Commission as part of the proceeding is within the exception. Such an interpretation of section 6(b)(4)(B) would make it inapplicable to information released to FOIA requesters.

Such an interpretation of section 6(b)(4)(B) would appear to conform to the overall statutory scheme of section 6 and the underlying congressional intent. In granting the Commission broad powers to gather, analyze, and disseminate vast amounts of private information, the Congress adopted "safeguards specifically designed to protect manufacturers' reputations from damage arising from improper disclosure of information gathered and received by the Commission." *GTE Sylvania*, 447 U.S. at 111–12, 100 S.Ct. at 2058.[2] In *GTE Sylvania*, the Court emphasized that "any increased burdens imposed on the Commission as a result of its compliance with § 6(b)(1) were intended by Congress in striking an appropriate balance between the interest of consumers and the need for fairness and accuracy with respect

---

1. A court may be required to undertake a detailed analysis of the merits when ruling on preliminary relief if granting this relief will cause substantial harm to other parties or persons, or when the equities do not clearly indicate which party is favored. *See WMATC*, 559 F.2d at 844.

2. The House Report states:
    If the Commission is to act responsibly and with adequate basis, it must have complete and full access to information relevant to its statutory responsibilities. Accordingly, the committee has built into this bill broad information-gathering powers. It recognizes that

in so doing it has recommended giving the Commission the means of gaining access to a great deal of information which would not otherwise be available to the public or to Government. Much of this relates to trade secrets or other sensitive cost and competitive information. Accordingly, the committee has written into section 6 of the bill detailed requirements and limitations relating to the Commission's authority to disclose information which it acquires in the conduct of its responsibilities under this act.
H.R.Rep. No. 1153, 92nd Cong., 2d Sess. 31 (1972).

to information disclosed by the Commission." *Id.* at 123–24, 100 S.Ct. at 2064.

. Without the section 6(b)(4)(B) exception, the Commission would be unable to introduce material during the administrative hearing without first preclearing the material pursuant to section 6(b)(1). The statute, therefore, permits the Commission to be a full participant and zealous advocate in complaint proceedings without being hampered by the requirements of section 6(b)(1). In permitting disclosure during the hearing, the Congress recognized that the hearing procedure would afford significant safeguards against release of inaccurate and misleading information since the manufacturer would have an opportunity to rebut any information introduced by the Commission. The safeguards inherent in the hearing itself would be roughly equivalent to those provided by section 6(b)(1).

To permit the release of discovery material without section 6(b)(1) preclearance also could subvert the adjudicatory process since the often used remedy of disseminating product information to the public would be available to the Commission before the conclusion of the proceeding. If section 6(b)(4)(B) were given a broad interpretation, the Commission could affirmatively release product information obtained in discovery or generated from data obtained in discovery before the conclusion of the administrative proceeding and without preclearance under section 6(b)(1). Since such information dissemination was intended as a remedy, the application of section 6(b)(4)(B) must be carefully considered on the merits.

The day before Honeywell filed this action, the Commission published its final interpretative rules concerning disclosure of information. In its proposed rules published in November 1982, the Commission defined "in the course of" as referring to "information disclosed as part of the proceeding and may, therefore, include information generated before the proceeding began and later presented as part of the proceeding." 47 Fed.Reg. 50,290 (1982). Although it is unclear as to the document

in which it appeared, it seems to be uncontested that on December 14, 1983, the Commission adopted final rules in which "in the course of" was to refer to "information disclosed as part of the adjudication, whether in documents filed or in testimony given in such proceedings...." Plaintiff's Memorandum of Points and Authorities in Support of its Motion for a Preliminary Injunction, App. 2. When it adopted the final rules, the Commission also approved an explanatory preamble to accompany the rules. The preamble that was approved contained an insert in which the Commission stated that "discovery materials filed in the case docket maintained in the Office of the Secretary, provided to the Presiding Officer, or exchanged among the parties ..." were within the exception. *Id.* at App. 4. The phrase "exchanged among the parties" does not appear to be authorized by the rules adopted on the same day. In the published version of the final rules, however, the phrase "in the course of" was described as referring to "information disclosed as part of the adjudication, whether in documents exchanged during discovery filed [sic] or in testimony given in such proceeding...." 48 Fed.Reg. 57,435 (1983).

The published proposed rules and the unpublished final rules, perhaps adopted on December 14, 1983, support the narrower view of the exception. Both sets of rules provided that the exception applied to "information disclosed as part of the proceeding," such as documents filed and testimony given during the adjudication. Using this interpretation, disclosure of discovery material to a FOIA requester could not be considered as part of the proceeding and therefore would not be within the exception. The Commission, however, requests that the Court give significant weight to the published version of the final rules, which included information "exchanged during discovery" within the exemption. *See* 48 Fed.Reg. 57,435 (1983). Although the final rules were garbled when published, the Commission assures the Court that such rules will be corrected to provide that "[t]he phrase 'in the course of' refers to

information disclosed as part of the adjudication, whether in documents filed or exchanged during discovery, or in testimony given in such proceeding ...." Defendant's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction, Attachment 2.

■ In light of the circumstances surrounding the promulgation of the Commission's interpretation of "in the course of" and its possible conflict with the statute, the Court is reluctant at this stage in the proceeding to accord the Commission's interpretation any deference. Although a court is not required to give effect to an interpretative regulation, it ordinarily will give an administrative interpretation of a statutory term important but not controlling significance.[3] *Batterton v. Francis,* 432 U.S. 416, 424, 425 n. 9, 97 S.Ct. 2399, 2405 n. 9, 53 L.Ed.2d 448 (1977); *see Chrysler Corp.,* 441 U.S. at 315, 99 S.Ct. at 1724; *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). According to the Supreme Court, "[v]arying degrees of deference are accorded to administrative interpretations, based on such factors as the timing and consistency of the agency's position, and the nature of its expertise." [4] *Batterton,* 432 U.S. at 425 n. 9, 97 S.Ct. at 2405 n. 9. In *Davis Warehouse Co. v. Bowles,* 321 U.S. 144, 156, 64 S.Ct. 474, 481, 88 L.Ed. 635 (1944), the Court gave little significance to the administrative interpretation of the statute since the ruling was immediately challenged and thus failed to broaden into a settled administrative practice. Similarly in this case,

the interpretative ruling issued just one day before this action was commenced. In fact, the Commission had been promulgating the information disclosure rules since September 1980. *See* 47 Fed.Reg. 50,283 (1982).

■ Further, the timing and consistency of the Commission's interpretation of "in the course of" do not indicate that the final interpretation is necessarily entitled to deference. Both the timing and consistency of the addition of "exchanged during discovery" may raise serious questions. In addition, the interpretation of the statutory term at issue does not employ the Commission's expertise. Rather, courts are the final authorities on issues of statutory construction, and thus they are not required to affirm administrative interpretations that are inconsistent with the statute or underlying congressional policy. *Securities And Exchange Commission v. Sloan,* 436 U.S. 103, 118–19, 98 S.Ct. 1702, 1711–1712, 56 L.Ed.2d 148 (1978); *Volkswagenwerk Aktiengesellschaft v. Federal Maritime Commission,* 390 U.S. 261, 272, 88 S.Ct. 929, 935, 19 L.Ed.2d 1090 (1968); *Federal Trade Commission v. Colgate-Palmolive Co.,* 380 U.S. 374, 385, 85 S.Ct. 1035, 1042, 13 L.Ed.2d 904 (1965). Since questions exist as to the procedural and substantive propriety of the Commission's definition of "in the course of," it is entitled to very little deference in construing section 6(b)(4)(B) and in assessing Honeywell's likelihood of success on the merits.

---

**3.** The Commission's interpretative rules are properly accorded less weight than administrative regulations that Congress has declared shall have the force of law. *General Electric Co. v. Gilbert,* 429 U.S. 125, 140, 97 S.Ct. 401, 410, 50 L.Ed.2d 343 (1976). Substantive rules must also be promulgated pursuant to section 4 of the Administrative Procedure Act (APA), 5 U.S.C. § 553 (1982). Promulgation pursuant to the APA is a prerequisite to giving a regulation the binding effect of law. *Chrysler Corp. v. Brown,* 441 U.S. 281, 315, 99 S.Ct. 1705, 1724, 60 L.Ed.2d 208 (1979).

**4.** The Court in *Skidmore* articulated the classic standard for according weight to administrative interpretations:

We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control. 323 U.S. at 140, 65 S.Ct. at 164.

At the very least, Honeywell has succeeded in raising a serious legal question regarding the application of section 6(b)(4)(B) to disclosure of discovery materials. This adequately satisfies the first prerequisite for obtaining preliminary injunctive relief since, as shown below, the balance of the equities favors Honeywell.

### B. *Irreparable Harm to Plaintiff*

Honeywell contends that the Commission's release of the discovery materials without first complying with section 6(b)(1) will irreparably injure its corporate goodwill and reputation and its competitive position. In granting the preliminary injunction in *GTE Sylvania,* the Court recognized that "plaintiffs' reputations would suffer substantially from the Commission's release of misleading safety information." 404 F.Supp. 352, 373 (D.Del.1975) (footnote omitted); *see Fountainhead Group, Inc. v. Consumer Product Safety Commission,* 527 F.Supp. 294, 297–98 (N.D.N.Y.1981), *vacated per stipulation,* 559 F.Supp. 17 (N.D.N.Y.1982); *Pierce & Stevens Chemical Corp. v. U.S. Consumer Product Safety Commission,* 439 F.Supp. 247, 250 (W.D.N.Y.1977), *aff'd and remanded mem.,* 578 F.2d 1369 (2d Cir.1978), *vacated* 585 F.2d 1382 (2d Cir.1978). The Court also determined that once the information in question was disseminated, it would become powerless to restore the status quo if it ruled for plaintiff on the merits. *GTE Sylvania,* 404 F.Supp. at 373; *see Dow Chemical, USA v. Consumer Product Safety Commission,* 459 F.Supp. 378, 395 (W.D.La.1978); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2148, at 434 (1973). Thus, a preliminary injunction in this type of a case preserves the Court's ability to grant effective relief.

More importantly, the Congress, by specifically authorizing a manufacturer to bring an action to enjoin disclosure, recognized the potential harm to a manufacturer if documents were released before the court made a determination on the merits. 15 U.S.C. § 2055(b)(3) (1982). If the status quo is not maintained in this case, the effectiveness of the congressionally mandated remedy will be emasculated.

### C. *Harm to Other Interested Parties*

During argument on the motion for preliminary relief, the Court specifically requested that the Commission and defendant-intervenors specify the harm they would suffer if preliminary relief were granted. Counsel for the Commission admitted that it would suffer no harm if it were precluded from releasing the information pending a resolution of this issue on the merits. Granting of relief would have no impact on the Commission's ongoing adjudicatory proceeding against Honeywell.

Counsel for defendant-intervenors also revealed that they would not be harmed by granting relief except for the fact that release of the requested materials would be somewhat delayed. Defendant-intervenors maintain that the information is needed to assist in furtherance of their civil actions against Honeywell. Discovery in the defendant-intervenors' civil case should be managed by the court hearing the action. FOIA was not intended to be a discovery tool for civil plaintiffs. *See Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974). Moreover, defendant-intervenors may still receive all the requested material.

### D. *Furtherance of the Public Interest*

When it enacted the CPSA, the Congress recognized that to be effective the Commission would need broad powers to obtain, analyze, and disseminate information. Congress also realized that this broad grant of authority needed to be tempered with the information disclosure safeguards in section 6(b)(1). In this case, the public interest favors precluding release of potentially misleading information pending resolution of this case on the merits. If relief were denied, the Commission would obtain the result it ultimately seeks; *i.e.,* release of the information without section 6(b)(1) preclearance. The Court would be powerless to grant effective relief if the Commission were not enjoined from disclosing the information. Since this is apparently a case of first impression, the public interest is furthered by maintaining the status quo

until a full hearing is held and a determination is made on the merits.

Further, section 6 was intended to prevent disclosure of inaccurate or misleading information in circumstances that were unfair or not related to effectuating the purposes of the CPSA. By enjoining disclosure, the Court ensures that the consumers will not receive information that has not been safeguarded either by section 6(b)(1) or by the procedures attendant to the adjudicatory proceeding itself.

### CONCLUSION

Since Honeywell has raised substantial legal questions regarding the applicability of section 6(b)(4)(B) and since the balance of the equities favors preserving the status quo pending a determination on the merits, the Court will enjoin the Commission from a public disclosure of materials related to discovery in *In re Honeywell,* CPSC Docket No. 83–2.

An Order consistent with this Memorandum Opinion will be entered on this date.